By the COURT.
Duer, J.
All the objections that have been taken to the plaintiff’s recovery may not be well founded, but there are one or two that we cannot do otherwise than hold to be fatal, and to these we shall confine our remarks.
It may be conceded, for the purposes of this decision, that it is sufficiently proved that Hiles >vas at one time the owner in fee of the premises which the plaintiff seeks to recover. It is probable that the defendant, Wesson, having obtained the possession, for aught that appears, solely by virtue of a conveyance from Hiles, is estopped from denying his title.
The question then is, whether the estate of which Hiles was seized, on the 14th of April, 1849, or at any time thereafter, by force of the deed from the sheriff, became vested in the plaintiff?
The deed from the sheriff recites that he had levied on and sold the estate and interest of Hiles in the lot in question, as well as in other lots and pieces of land, by virtue of two executions, one issued out of the court of Common Pleas for the city and county, the other issued out of this court, each in a suit in which Samuel A. Suydam was plaintiff, and George W. Hiles defendant, *351 and the executions tins referred to, as a necessary part of tie proof tiat tie plaintiff was bound to give, were produced and read upon tie trial. Tiey constituted tie sheriff’s autiority to sell, and if ie iad no suci 'autiority tie sale was void, and tie deed passed no title to tie plaintiff
Tie execution from tie Court of Common Pleas recites tiat Suydam iad recovered a judgment in tiat Court against Niles for $1,016.96, and tiat tie judgment roll was filed, and tie judgment properly docketed, on tie 6ti of June, 1851; and it commands tie sieriff, if sufficient personal property of tie defendant could not be found, to satisfy tie judgment out of tie real property belonging to tie defendant on tie said 6ti day of June, or at any time thereafter; and it is quite certain tiat iad tiere been no otier execution tian this, tie sale by tie sieriff of tie lot in question would iave been unauthorized and illegal, and iis deed, so far. as it embraces this lot, of no more value tian blank paper. Tie plaintiff himself proved tiat tie lot was not tie property of Niles on tie 6th of June, 1851, nor at any time thereafter, but tiat Niles iad conveyed it in fee to tie defendant Wesson, on tie 13th of January, in tie same year, by a deed of which tie validity is undisputed. This execution, therefore, was not applicable at all to tie lot in question, and even by its terms gave no autiority to tie sieriff to levy on and sell it. Hence tie offer of tie plaintiff to produce in evidence a judgment roll corresponding with tie recital in tie execution was very properly rejected. Tie evidence was plainly immaterial, since, although it would iave proved tiat tie execution was regularly issued — a fact not denied — it iad no tendency to prove tie legality of tie sale, tie fact which tie plaintiff was bound to establish.
This defect of autiority in tie sieriff to sell and .convey tie premises in question, under tie execution from tie Common Pleas, suggests an important question, which, as it was not raised upon tie argument, we shall not decide, but wbich is proper to be stated, in order to repel a false inference tiat might be drawn from our silence. Tie question is, whether this defect of autiority, even upon tie supposition tiat it was partial, and tiat tie sheriff iad a right to sell under tie execution from this court, was not alone sufficient to render void iis entire proceedings. We, of course, mean in their relation to tie lot in question. *352 When a sheriff’s deed recites that the lands'which it purports to convey, were sold to him under two executions; ;and' it appears that the suin raised was not more than sufficient to' satisfy the first, we doubt not, that the recital of- the '•second -may be- disregarded as immaterial, since it is under the first that the sale- in reality was made/ But the case is widely different'when the sum raised not only satisfies the first execution, but leaves-a surplus, applicable in whole or in part, to the satisfaction of the' second, and which, it appears, was so applied. ' For it seems then to be certain, that the' sale was made under both, and,-consequently, that an authority derived from both is essential to its-validity.And this would seem to be especially true,'when'the sale, as in the case before us, is an entire proceeding, that is, when the lands which it embraces are sold in one body, and for a gross sum, so as to render it impossible to refer the sale or price of any one lot or piece, to either'execution in preference to the other. We' do not mean to decide, for the- reason already given, that, even in such a case, proof that the sale was lawfully made under both executions would be indispensable-to sustain the title of a purchaser; but we mean distinctly to intimate, that were there no- other question in this cause, we should have great diffictdty in' holding that the plaintiff is entitled to recover. Upon this supposition, we should order a second argument.
Assuming, however, that the complaint ought not to have been dismissed, if the plaintiff succeeded in proving that the sale by the sheriff of the lot in - question, was fully authorized by the execution issued from this court, although not justified by that from the Common Pleas, the next inquiry is, what are the terms of this execution? and what proof has been given that it was law-folly issued.
The execution recites, that in an action in this court, in which Suydam was the plaintiff, and Niles the defendant, the plaintiff had recovered a judgment against the defendant for the sum of $27.25, and that thé judgment roll had been duly filed, and the judgment docketed on the 14th of April, 1849. And if this recital is unsustained by proof, it is clear that the plaintiff cannot be entitled to recover, unless we are prepared to hold, as the plaintiff contended, that no such proof was necessary to be given. - ,
*353 It is not pretended that the judgment mentioned in the recital had been obtained by Suydam in an action in which he was the plaintiff; on the contrary, it is admitted that he was the defendant in the action in which the judgment was rendered. And it was insisted by the counsel for the defendants, that had such a judgment been proved, the variance between the record and the execution would alone have been a bar to the plaintiff’s recovery. We consider this, however, a doubtful question, which it is unnecessary to decide. It is possible that the variance, as a mistake, amendable of course, might have been disregarded. (4 Wend. 462; 8 Wend. 676.)
Passing over the variance, has the existence of a judgment in favor of Suydam creating a lien on the real property, that belonged to Niles on the 14th April, 1849, and therefore war- , ranting the execution on which the sale was made, been established by the evidence, which the law requires? and assuredly it has not, if the production.of a judgment roll duly filed is the only evidence that the law permits to be received; the only evidence by which the existence of such a judgment could be established. It is 'by the provisions of the Code that this question must be determined,, and these, it seems to us, are so plain and imperative, as to exclude the possibility of doubt as to their construction and effect. It was by a stretch of courtesy that we listened to any argument on the subject.
The Code provides, that after the entry of a judgment, upon an issue of law or of fact, shall have been directed by a Judge, (§ 298,) and after thé clerk shall have entered the judgment so directed in the judgment book, (§ 280,) the clerk, unless the party or his attorney shall furnish a judgment roll, shall attach together and file certain papers which shall constitute the judgment roll, and among these papers are the summons and the pleadings in the cause, or copies thereof, (§ 281,) and it then provides, that on the filing of the roll, the judgment, if directing, in whole or in part, the payment, of money, may be docketed with the clerk of the county where it was rendered, and shall be a lien on the real property in the county, of the person against whom it was rendered, which he had at that time, or may thereafter acquire, (§ 282.)
Comparing these provisions, it is cértain, that notwithstanding *354 a judgment absolute and final shall have been directed by a Judge, and the judgment so directed have been duly entered by the clerk, yet until the papers, which are to constitute the judgment roll, shall have been attached and filed, and the judgment, evidenced by the roll so filed, has been regularly docketed, there is no judgment, creating a lien on the lands of the debtor, and • when no lien has been created, it seems to us a necessary consequence, that an execution against the lands of the debtor cannot lawfully be issued, and that an execution thus illegal in its origin, although regular on its face, conveys no more authority to the sheriff to sell the lands which it describes, than he would have had if no judgment whatever had been rendered, and no suit been commenced. It is wholly void.
When we inquire whether it has been proved, in the case before us, that a.judgment roll has been duly made and filed, the necessary reply is, that no such proof has been given. It is impossible • for us to say, that the paper which was read in evidence upon the trial, as proving the existence of a judgment warranting the execution, is a judgment roll. It possesses none of the requisites of such a roll as defined by the Code. It proved that proceedings preparatory to the making and filing of a judgment roll, those which must precede the roll, but are wholly distinct from it, had taken place. It proved that a judgment in favor of Suydam against Niles, for the sum mentioned in the execution, had been rendered and duly entered, but it did not prove, nor tend to prove, that a judgment roll had been made and filed, containing the papers or any of them, which for the purpose of constituting the roll, the Code requires to be attached. . It did not even prove that a summons, complaint, answer, or demurrer, had at any time been filed, and to give to a paper containing neither process nor pleadings the name and effect- of a judgment roll, would be not merely an abuse of language, but a direct violation of the provisions of the Code.
It was indeed proved, in addition to the paper relied on, that a judgment corresponding with that entered in the judgment book had been docketed in the proper office, but as no roll had been previously filed, the docketing was an unauthorized and illegal act. It added nothing to the efficacy of the execution, but like that, and for the same reason, was itself wholly void. The words of *355 the Code plainly require, that to create a lien tie filing of the judgment roll must precede the docketing of the judgment.
The conclusion is, that no evidence was given on the trial, of the truth of the recital in the execution, upon the truth of which, the right to issue the execution, and its validity, when issued, solely depended; and if this evidence was necessary to "be given, the plaintiff showed no title to recover, and his complaint was properly dismissed. '
It has, however, been earnestly and confidently insisted, that this evidence was not necessary to be given. That the only facts which the plaintiff was bound to prove were, the execution, the sale, the sheriffs certificate and deed, and that the property belonged to Niles when the judgment was docketed, and that these facts were fully proved. That the court was bound to presume that the recital in the execution of the filing of a judgment roll was true, and that the burden of proving its falsity, if such proof was admissible, rested on the defendants. The plaintiff, indeed, admitted that the general opinion of the profession, is and has been, that in order to make a title under a sheriff’s deed, the production of the judgment roll referred to in the execution on which the sheriff acted, is just as indispensable as that of the execution itself, nor did he deny that to require such proof had been the invariable practice; but he contended that the practice had obtained, without any inquiry into its necessity or propriety, and’ was, in reality, founded on no principle, and sustained by no authority.
These are certainly bold as well as novel positions, and we might well dismiss them by saying, that .a usage that has uniformly prevailed, and, we do not at all doubt, has prevailed in this state from the time that the real properly of debtors was first made liable to sale under execution, ought, in our judgment, to be regarded not merely as strong, but conclusive evidence of the existing law; but we add, that it would have been a matter of great surprise, had the sanction of our courts ever been given to a different practice. There is no rule of" evidence more reasonable in itself) and more imperative in its terms;, than that which, on the trial of a cause, casts the burden of proof upon the party who holds the affirmative, and it is upon this rule that the usage which has been followed is manifestly founded. As the right to *356 sell lands under an execution is derived from, statute, it is only by showing that the provisions of the statute have been complied with that the existence of the right can be proved, and hence, it is this proof, which he who affirms the existence of the right is bound to give, and it can only be given by the production of the judgment roll or an exemplification. It would be contrary to principle to permit him to rest, on the presumption of a fact which if it exist, it is in his power to establish by the highest and most conclusive evidence.
We inclined upon the argument to agree with the plaintiff, that the usage requiring the production of the judgment roll had never been recognized or affirmed by an express decision, since we thought it very improbable that any question as to the existence of the usage, or the obligation to follow it, had ever been raised. We have found, however, upon examining the Reports, that we were mistaken, and that this is not the first time that the ■ question has been agitated, although we trust it will be the last.
In the case of Jackson v. Husband, (12 John. 214,) which was an action of ejectment, the plaintiff, who had purchased the premises at a sheriff’s sale, and claimed them under a deed from the sheriff, was permitted to recover upon the trial, upon proof of the execution and other material facts, without producing an exemplification of the judgment record, probably upon the ground that the defendant in possession was shown to be merely a tenant of the judgment debtor. The counsel for the defendant, contending that the proof so given was insufficient to warrant a recovery, moved for a new trial, which, without hesitation or any division of opinion, was granted by the court, upon the ground that against a third person “ the execution without the judgment showed no right to intermeddle with the property,” in other words, gave no authority to the sheriff to sell and convey it. About forty years have elapsed since this decision was made, and we do not believe that during this long period its propriety has ever been called in question. That it has been constantly followed in practice is certain.
Nor is this a solitary decision, for in a subsequent case, the Supreme Court went still further. In Barrie v. Dana, (20 John. 307,) it appeared that the defendant was in prison, under a Ca. Sa., and a motion was made for his discharge, by setting aside *357 the execution, the ground of the motion being that no judgment roll had been filed when the execution was issued. In England, although the lands of a debtor cannot be extended under an ekgit until the record of the judgment has been filed, as well as signed, the signing is alone sufficient to warrant an execution against his goods or person; and the counsel for the plaintiff, in resisting the motion, relied upon the English authorities, which it was proved were directly applicable. The court, however, granted the motion, and Spencer, Ch. J., in delivering its judgment, said that it was unnecessary to take notice of the English authorities, since for more than thirty years it had been the established and invariable practice of the court, to require the judgment roll to be filed before the issuing of an execution.” The defendant was discharged, upon stipulating not to bring an action for false imprisonment — a stipulation plainly unnecessary, unless the execution was held to be void.
The decisions that have been cited were made many years prior to the adoption of the Revised Statutes, in which a clause, that will be stated, was first introduced, and introduced as the notes of the revisers show, for the express purpose of declaring the law in conformity to the decision in Barrie v. Dana. The clause is in these words: “ No judgment shall be deemed valid, so as to authorize any proceedings thereon until the record thereof shall have been signed and filed.” (2 R. S., p. 360, § 11, last clause.) There is certainly no ambiguity here. The proceeding which, until the judgment record shall have been signed and filed is forbidden, is an execution, and an execution, not authorized by a valid judgment, is clearly void.
It is true that this provision is not re-enacted in the Code, but as it is not expressly repealed, and, in its substance, is not inconsistent with the provisions of the Code, we see no reason to doubt that it is still in force. At any rate, the mere omission of a clause simply declaratory, cannot have operated as a repeal of the rule of law which it declared, and which, we must hold, that we are bound to follow. After the statement that has been made of the authorities, by which the practice of requiring the plaintiff in actions like the present, to produce the judgment roll upon the trial, as well as the execution, is so fully approved and confirmed, it is needless to protract the discussion; and of the *358 cases that were cited and relied on by tbe plaintiff, it is sufficient to say, tbat in our opinion, tbey are wholly inapplicable, and tend in no degree to sanction a doctrine at all opposed to tbat which has been stated. It may be true, that in many cases, the sheriff is protected from liability as a trespasser, by an execution regular on its face, but assuredly it is not true, that in any case he can give a valid title to lands by a sale under an execution, valid on its face, but wholly unauthorized by a judgment corresponding with its terms, and creating a lien on the lands of the debtor.
The conclusion is, that the plaintiff was properly nonsuited, and that a judgment must be entered for the defendant, dismissing the complaint, with costs.